## Hannis *versus* Hazlett.

1. Married women being held to strict account of the source from which they derive money to invest in business or real estate, they must be permitted to explain the ordinary means of derivation; their correspondence with a business agent is natural evidence for this purpose.

2. Letters of this kind bear such a relation to the fact under investigation as to be admissible upon the rule of *res gestæ*.

3. A married woman loaned money to a business firm and purchased real estate, alleging that the money came to her under the will of a relative. Letters from herself to the administrator and his letters in reply on the subject, about the time of the transactions, were held to be competent evidence in a contest with her husband's creditors.

January 21st 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Delaware county.*

This was an action of ejectment, by William C. Hannis against Robert M. Hazlett and Mary A. Hazlett his wife, for a farm in Delaware county, the title to which was in the name of Mrs. Hazlett.

On the 1st day of May 1860, Peter Purcell conveyed to Mrs. Hazlett a house and lot for the consideration of $5700, which was made up of encumbrances on the premises amounting to $3166.66; $1500 in a mortgage by herself and husband payable in one year—$1000 in a note from the firm of Powell, Hazlett & Co., of which her husband was a member, and $33.34 paid in cash or in some other way at the time. The $1000 note appears to have been paid by the firm. On the 19th of August 1862, Thomas Erskine conveyed the premises in question to Mrs. Hazlett for the consideration of $12,000, which was paid by a conveyance of her West Philadelphia property at $2833.34, subject to encumbrances; $1500 in cash; $966.66 in the bond of her husband, and $6700 encumbrances then on the farm.

On the 28th of April 1863, Alexander Wray recovered judgment against Powell, Hazlett & Co. for $4740.34, and under it the sheriff sold the premises in dispute, as the property of Robert M. Hazlett, to the plaintiff. The defence to the ejectment was that the premises were the separate estate of Mrs. Hazlett.

[Hannis *v.* Hazlett.]

In support of this she gave evidence of having been entitled under the will of her grandfather and intestacy of a brother to some $9000 or more ; that part of this fund was loaned temporarily to her husband's firm ; that she received directly from her grandfather's and her brother's estates sums of money about the same in amount, and at about the same time with the payments made on account of her purchases.

The charge of Butler, P. J., approved by the Supreme Court, exhibits the details of the evidence.

On the trial, the defendants offered in evidence a letter from Mrs. Hazlett to her grandfather's administrator and his replies. Their admission was objected to by the plaintiff, but they were received by the court, and exception taken. Mrs. Hazlett's letter, under date of March 18th 1861, requested an advance of $1500, to make a payment on the West Philadelphia property. The administrator replied that he would do so on her own and husband's due-bill : another from him, of March 27th 1861, said that he enclosed her the amount.

There were other letters in April ; one informed her that he had money to send her ; another that he enclosed her money ; another, in April 1862, he proposed to buy her interest in her brother's land for $1200 ; another said he sent her money, and speaks of the sale of her brother's land ; another, in July, said he enclosed her a deed for execution ; another, in same month, said he enclosed her the $1200.

The plaintiff submitted points, in which he asserted that there was not sufficient evidence that the money paid for the land, was Mrs. Hazlett's separate estate.

The court disaffirmed the points and charged :—

\*          \*          \*          \*          \*          \*          \*

" Then, does the evidence in the case before us show that the farm in question was purchased and paid for (so far as it has been paid for) with the separate property of *Mrs. Hazlett ?*

" A part of the consideration paid for it was the West Philadelphia property, which Mr. Purcell had previously conveyed to Mrs. Hazlett. First, then, was *this* her property ? Was it purchased with her separate means ? The consideration for this West Philadelphia property, over the encumbrances, was $2533.34. This sum was satisfied by a mortgage on the property, executed by Mrs. Hazlett and her husband for $1500, payable in one year ; a note of Powell, Hazlett & Co. for $1000, and the balance, $33.34, Mr. Caldwell, the conveyancer, thinks was paid in money, but cannot remember. He says, however, that it was settled at the time. About this small balance the counsel have said nothing, and I need not, therefore, pause in respect of it, but will pass to the note for $1000. Was *this* Mrs. Hazlett's separate property ? Does it appear from the evidence that the firm by which it was

[Hannis *v.* Hazlett.]

drawn owed her this money at the time? One of the members of the firm, Mr. Lyon, tells you it did. He says, that in the fall preceding the purchase of the West Philadelphia property, Mrs. Hazlett deposited with the firm the sum of $1400, on call, to remain until she could find a piece of property into which to put it. And it seems to be entirely clear, and I believe is undisputed, that she received at the time the witness refers to—the fall of 1859—the sum of $1428.57, from the administrator of her grandfather's estate. It appears thus, that she had the money to deposit if she chose so to use it. * * * If you are satisfied from the evidence that the note was hers, given on account of her money as before stated, then she must have credit for it, and it is a payment on the West Philadelphia property by her, to this extent.—The mortgage given Mr. Purcell went into the hands of Mr. Chadwick, and was paid the next spring. Was *this* paid with money shown to belong to Mrs. Hazlett? Mr. Chadwick says a short time before the mortgage became due he called on Mrs. Hazlett to know whether she would meet it at maturity; that she said she did not expect to be called on for it at the time, but would apply to the administrator of her grandfather's estate to advance her money for the purpose. It appears from the testimony of the administrator, and from her letter to him, and his reply, that she did immediately apply to him for money, on account of her interest in the estate he represented, for this specific purpose (as she had told Mr. Chadwick she would), and that he furnished her $1485 on the 27th day of March 1861, very soon after Mr. Chadwick's visit to her. And Mr. Lathrop, a member of the firm of Powell, Hazlett & Co., testifies that on the same day on which this money was so furnished her by the administrator, she deposited with the said firm a sum precisely corresponding in amount with that which she had so received—$1485. Out of this deposit, Mr. Lathrop says he paid Mr. Chadwick $1082.50 on the mortgage in question; that this $1082.50 was the proper money of Mrs. Hazlett, does not seem to be questioned by the plaintiff.

"Mr. Chadwick says this payment left $500 due on the mortgage, and that for this he promised Mrs. Hazlett to wait upon her. This took place, he says, about the 1st of April. Next, we find that on the 29th of April, according to the testimony of the administrator, Mrs. Hazlett received a further payment on account of her interest in her grandfather's estate, of about $500. Mr. Chadwick says, that in the latter part of April, about the time she received this money, she sent for him, and informed him she had left the $500 and interest due him with the firm, where the former amount had been deposited, directing him to call there and get his money; that he did so, and it was paid to him. Was this $500 and the trifle of interest so paid, the separate property

of Mrs. Hazlett? There is no *direct* evidence that she deposited the money just then received from the administrator, with the firm. But you will look carefully at the circumstances shown, and if they fully satisfy your minds that the balance on the mortgage was paid with money thus received from her grandfather's estate, this will be sufficient to sustain the position of the defendant in this particular. It must be borne in mind that when called upon by Mr. Chadwick, the holder of the mortgage, for payments, she referred to her interest in her grandfather's estate as the source to which she looked for means to satisfy her obligation. That we find her immediately applying to the administrator for money for this specific purpose; that the administrator advanced her $1485, an amount insufficient to discharge the debt; that it was immediately deposited with the firm of Powell, Hazlett & Co.; that Mr. Chadwick was informed by her of this fact, and sent there to receive $1082.50 on account; that he was requested to wait upon her for a time for the balance; that soon thereafter she received a further sum of $500 from the administrator; and that at about the same time, she informed Mr. Chadwick that she was prepared to pay the balance (being within a very few dollars of the amount which she had just received), directed him to call on the firm where the former sum had been deposited, and receive his money; that he called, and this balance was paid him, as the previous sum had been.

"Looking carefully at the evidence, you will say whether it is clearly shown that these payments on the West Philadelphia property were made from the proper separate estate of Mrs. Hazlett. If you find they were, then to this extent she paid for the farm in suit, into which the West Philadelphia property was turned.

"In addition to what was thus paid on the farm, $1500 was paid to Mr. Erskine in cash, and a mortgage given him for $966.66. The mortgage was afterwards paid out of money borrowed by means of another mortgage on this property, and about it I do not think we need trouble ourselves. To this extent the purchase-money may be treated as unsatisfied. The only actual payment made on the farm, in addition to the transfer of the West Philadelphia property, was the $1500 paid in cash. Whose money was this? Does the evidence show it to have been *Mrs. Hazlett's*, and not her husband's? That she had it in her possession, and gave it to Mr. Paschall, the conveyancer for Erskine, and that her husband was not present, these circumstances of themselves would be unimportant. For if no more appeared the presumption would be, as I have before said, that the money was Mr. Hazlett's, and that she was merely his agent. Then what more does appear? Mr. Erskine testifies that, according to the terms of the contract for the farm, the conveyance was to have

[Hannis v. Hazlett.]

been made on the 1st of April, or about that time, but that it was postponed because Mrs. Hazlett was unable to comply with the terms ; that she had been disappointed in getting her money from Pittsburg.

"Then we find, from the testimony of the administrator, before referred to, that there *was delay at this time* in consummating the sale and transfer of certain real estate in which she was interested (the mansion-house which came from her brother); and that on *the 29th of June* he sent her $600, and on *the 26th of July* $1200 more, making in all $1800.

"Then in August, the following month, she met Mr. Erskine at Mr. Paschall's office, and paid him $1300—being within $300 of the amount which we have seen she had very recently before received. Here, again, there is no direct evidence that the money which she thus received from the administrator was the same money which she paid to Mr. Erskine. But I have referred you to the circumstances attending the transaction with Mr. Erskine, and upon this evidence and whatever else you may find in the cause bearing upon the point, I submit the question to you whether it was the same money or not. Unless the evidence clearly shows and fully convinces you that it was the same, you must treat it as the husband's.

"I have now called your attention to the several payments which were made on the West Philadelphia property, which was transferred in part payment for the farm, and to the single payment in cash, which, in addition, was made on the land in suit. And I have submitted to you the question whether it is clearly shown by the evidence that these payments were made with the *proper separate estate of Mr. Hazlett.* If it is so shown, then the plaintiff is not entitled to recover, and your verdict must be for the defendant. On the other hand, if the evidence does not fully satisfy your minds that these payments were from *Mrs. Hazlett's own separate estate,* your verdict must be for the plaintiff.

"Or, if you find that any part of the money so paid is *not shown to have been the wife's,* then your verdict should be for the plaintiff, conditioned that he release it on the defendant paying to him, within a reasonable time, to be named by you, the amount which you so find was not paid by the wife, and which must be treated as a payment by the husband." * *

The jury found for the defendants, and in the Supreme Court the plaintiff assigned the disaffirmance of his points and the admission of the evidence objected to for error.

*E. S. Miller,* for plaintiff in error.—When a wife claims property as purchased by her during coverture, she must show that the consideration was her own by clear and satisfactory evi-

dence: Hoffman v. Tener, 13 Wright 232; Fleck v. Devries, 14 Id. 266; Gamber v. Gamber, 6 Harris 363; Keeney v. Good, 9 Id. 349; Bradford's Appeal, 5 Casey 513; Walker v. Reaney, 12 Id. 410; Winter v. Walter, 1 Wright 162; Wieman v. Anderson, 6 Id. 318. It must be proved, not merely that she had the means to pay, but that she in fact paid with such means: Tripner v. Abrahams, 11 Wright 228. As to the admissibility of the evidence in the letters: Black v. Nease, 1 Wright 433; Parion v. Capewell, 9 Id. 92, and cases there cited; Gamber v. Gamber, 6 Harris 366; Holler v. Wenner, 3 Id. 244.

If the letters were evidence of the receipt of the money, they certainly were not evidence of how it was to be used.

The property was bought on the credit of the husband: Hallowell v. Horter, 11 Casey 375; Robinson v. Wallace, 3 Wright 133; Hoffman v. Tener, 13 Id. 232; McKee v. Gilchrist, 3 Id. 233.

*W. H. Sutton*, for defendants in error.—There was sufficient evidence that the various payments on the West Philadelphia property and the farm were the money of Mrs. Hazlett: Manderbach v. Moch, 5 Casey 46; Gamber v. Gamber, 6 Harris 366; Fleck v. Devries, 14 Wright 266.

Absolute demonstration is no more to be looked for in this class of cases than in other lawsuits, and where *any* evidence is offered from which the conclusion sought can be fairly deduced, it ought to be submitted to the jury: Fleck v. Devries, 14 Wright 267; Black v. Nease, 1 Id. 433; Barncord v. Kuhn, 12 Casey 390, and Conrad v. Shermo, 8 Wright 193.

The letter of Mrs. Hazlett was rightly admitted, rather as a *fact* than a declaration: 1 Greenl. on Ev., §§ 100, 108, and note 1; Townsend v. Maynard, 9 Wright 201; Gicker v. Martin, 14 Id. 142; Stauffer v. Young, 3 Id. 460.

A bond or a mortgage given by a married woman for purchase-money is not on her credit personally but on the credit *of the land*: Patterson v. Robinson, 1 Casey 81; Ramborger v. Ingraham, 2 Wright 146; Glass v. Warnick, 4 Id. 140; Bortz v. Bortz, 12 Id. 387; Conrad v. Shermo, 8 Id. 193; Goff v. Nuttall, Id. 81.

*E. S. Miller*, for plaintiff in error, in reply, cited Barringer v. Stiver, 13 Wright 129.

The opinion of the court was delivered, February 14th 1867, by

WOODWARD, C. J.—The general question in this case was whether the purchase-money for the farm in question so far as it had been paid was paid out of the separate estate of Mrs. Hazlett. The title was in her name and if her money had bought it her

[Hannis v. Hazlett.]

husband had no estate in the land that his creditors could seize and sell, and the plaintiff, of course, took nothing by the sheriff's deed. This was a question of fact which was for the jury upon the evidence, and all the proofs were so admirably summed up and presented to them by the learned judge as to leave the parties no ground of complaint and nothing for us to discuss. We cannot perceive any error in either the principles of law stated for the guidance of the jury or in the judicial comments upon the effect of the proofs. We dismiss all the errors assigned upon the charge, therefore, without farther observation.

There is a bill of exceptions to the correspondence between Mr. Hutchinson and Mrs. Hazlett. Several letters of Mr. Hutchinson, who acted as her agent at Pittsburg in collecting and sending her moneys, and one letter of hers to him, were admitted, and we think, properly. Holding married women to a strict account of the source from whence they derive moneys to invest in business or real estate, they must be permitted to explain the ordinary means of derivation, and what is more natural evidence than correspondence with a business agent? These letters bore such a relation to the fact under investigation as to be admissible upon the rule of *res gestæ*. They were a legitimate and very satisfactory mode of accounting for Mrs. Hazlett's capacity to buy valuable real estate, and to loan money to men in business, and they furnished the plaintiff with such information of her resources as enable him to contradict her upon the main fact in controversy, if successful contradiction were possible. We do not think any rule of evidence recognised in adjudged cases was violated by the admission of the letters.

The judgment is affirmed.